IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YEVGENIYA CONDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) NO. 3:22-cv-00847 |
| VANDERBILT UNIVERSITY MEDICAL | ) |
| CENTER and ASSIGNMENT AMERICA, | ) JUDGE RICHARDSON |
| LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDIUM OPINION AND ORDER

Pending before the court is Defendant Assignment America, LLC's ("Defendant")[1] renewed motion (Doc. No. 38, "Motion") to compel arbitration and to dismiss Plaintiff Yevgeniya Condon's amended complaint, supported by a memorandum of law (Doc. No. 39). Plaintiff filed a response (Doc. No. 40), and Defendant filed a reply (Doc. No. 41). For the reasons discussed herein, Defendant's motion to compel arbitration will be granted in part and denied in part. Specifically, Plaintiff's claim against Defendant contained in the amended complaint will be referred to arbitration, but the claim will be stayed, rather than dismissed, in this action pending the completion of arbitration.[2]

---

[1] Hereinafter, "Defendant" will refer to Assignment America, LLC. The only other Defendant, Vanderbilt University Medical Center ("VUMC"), did not join in Assignment America's motion to compel arbitration has not otherwise sought to compel arbitration, and will not herein be ordered to go to arbitration.

[2] Because Defendant requested a dismissal of the claim against it pending arbitration, its motion is granted only in part.

BACKGROUND

1. **Facts**[3]

Defendant is a staffing and recruiting agency that places workers in a variety of employment opportunities. (Doc. No. 34 at 2). On October 25, 2021, Plaintiff applied for a position with Defendant, to be staffed at Vanderbilt University Medical Center ("VUMC") as a Critical Care Nurse. (*Id.*).[4] Defendant then offered to assign Plaintiff to VUMC through its staffing contract with Cross Country Staffing. (Doc. No. 23-1 at 1). In Plaintiff's employment contract with VUMC,[5] Plaintiff's anticipated start date was scheduled for November 29, 2021.[6] (Doc. No. 34 at 3).

---

[3] As explained below, in resolving motions to compel arbitration, the Court treats the facts as it would on summary judgment. In other words, facts stated in the pleadings are not taken as true. Instead, to establish a particular fact, the party bearing the burden to establish that fact must point to evidence in the record and persuade the Court that there is no genuine dispute, in light of the record, as to the truth of that fact. Therefore, the facts contained in this section are treated as true based on the Court's assessment of the evidence on the record. Where there is no evidence on the record to establish a particular asserted fact, but the inclusion of that fact herein is material to the resolution of the instant motion, the Court treats the fact as true *if* it is evident from the relevant briefing that the fact is undisputed. If a fact is disputed as reflected by the parties' briefs, and there is no evidence on the record with respect to the truth of the fact, then the Court treats this fact as disputed and makes no finding as to its truth for the purposes of the instant motion.

[4] Defendant "offered to employ Plaintiff, and to assign her to work at VUMC." (Doc. No. 23-1 at 1).

[5] There is ambiguity as to why Plaintiff signed the Agreement with Defendant as an "Employee," when the facts on the record also reflect that Plaintiff was offered an employment contract with VUMC. It is possible that had she accepted her assignment with VUMC, Plaintiff would have been an employee of both Defendant and VUMC. It is also possible that the reference to the contract being an "employment" contract is inexact, and that what Plaintiff would have received under such contract was not "employment" as such but rather access to VUMC's spaces, patients, and information in order to conduct her employment with Defendant.

Nonetheless, the Court need not resolve this ambiguity to resolve the instant motion. The fact that Plaintiff was offered an employment contract with VUMC does not change the Court's analysis was to whether Plaintiff was an employee of Defendant, and neither Plaintiff nor Defendant argue to the contrary.

[6] Neither the amended complaint nor the record as a whole indicate whether Plaintiff signed this contract.

On October 30, 2021, Plaintiff was informed by Defendant that to work for VUMC, she would be required to receive the influenza vaccination by November 22, 2021. (*Id*.). Plaintiff contends that her sincerely held religious beliefs prevented her from receiving the influenza vaccination. (*Id*.). Defendant, however, informed Plaintiff that there will be "no declinations accepted by VUMC for any reason. The vaccine is mandatory." (*Id*.). Apparently refusing to take "no" for an answer, Plaintiff then asked Defendant to request a religious accommodation for her from VUMC to exempt her from the vaccine requirement. (*Id*.).

On November 3, 2021, after being informed that no exceptions to the vaccination requirement would be made, Plaintiff signed an Arbitration Agreement ("Agreement") with Defendant (Doc. No. 23-1 at 3-4). On November 11, 2021, Defendant informed Plaintiff that VUMC did not approve her request for a religious accommodation to exempt her from the vaccine requirement. (Doc. No. 34 at 3). In addition, Defendant stated that it had to abide by the contractual agreement between Defendant and VUMC,[7] which requires the "travelers"[8] to have the influenza vaccination, unless a medical exception is granted. (*Id*.). As a result of her refusal to receive the influenza vaccine, Plaintiff was ultimately not assigned to work at VUMC. (Doc. No. 23-1 at 3–4).

---

[7] Neither the amended complaint, the briefs, or the evidence on the record clarify the nature of the "contractual agreement" between Defendant and VUMC. In light of the record as a whole, the Court assumed that the "contractual agreement" is a business agreement between Defendant and VUMC. The nature of the "contractual agreement," however, is not material to the issues raised in or the resolution of the instant motion.

[8] The parties have not provided a definition of "travelers," though it is reasonable for the Court to assume that "travelers" refers to "traveling nurses" or other healthcare professionals. Importantly, the parties do not appear to dispute that "travelers" encompasses Plaintiff's potential assignment to VUMC.

2. **Procedural Background**

On March 30, 2023, Plaintiff filed an amended complaint and demand for jury trial against VUMC, alleging discrimination on the basis of her religious beliefs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII") and the Tennessee Human Rights Act ("THRA"). (Doc. No. 34 at 4). The amended complaint also sets forth a claim against Defendant for allegedly violating the THRA. (*Id.*). On April 14, 2023, Defendant filed the instant Motion and memorandum in support. (Doc. Nos. 38, 39). Plaintiff filed a response (Doc. No. 40), and Defendant filed a reply. (Doc. No. 41). The Motion is now ripe.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1270-71 (M.D. Tenn. 2020) (citing 9 U.S.C. § 2).

When resolving a motion compel arbitration under the FAA, a court has four tasks: "[F]irst, it must determine whether the parties agreed to arbitrate; Second, it must determine the scope of that agreement; Third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; Fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). This has come to be known as the *Stout* test.

"'The Sixth Circuit has applied the summary judgment standard under Fed. R. Civ. P. 56 when ruling on motion to compel arbitration.'" *Hammond v. Floor & Décor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 2473717, at *4 (M.D. Tenn. May 13, 2020) (explaining *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). The application of the summary-judgment standard has particular consequences at the crucial first step of the *Stout* test. It means that "'[a]s the party moving to compel arbitration, Defendant bears the ultimate burden of establishing the existence of a valid agreement to arbitrate and must, as an initial step, come forward with some evidence showing that the plaintiff agreed to arbitrate.'" *Id.* at *3. Then, the plaintiff, as the party opposing arbitration, "must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.* at *4 (quoting *Great Earth Companies, Inc.,* 288 F.3d at 889). Thus, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration and "determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Yaroma v. Cashcall, Inc.,* 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000) (stating that the party challenging arbitration has the burden of proving that the claims at issue are not arbitrable).

In evaluating the validity of an arbitration agreement,[9] a court should consider "the national policy favoring arbitration, and [in doing so, should] place[] arbitration agreements on equal

---

[9] The Court is aware that a theoretical distinction can be made between the *enforceability* (or lack thereof) of an agreement (or a particular provision therein) and the *validity* (or lack thereof) of that agreement (or particular provision thereof), and that in some contexts the distinction can be one with a difference. *See* Ved P. Nanda, David K. Pansius, Bryan Neihart, 2 *Litigation of International Disputes in U.S. Courts* § 7A:6. On the other hand, it is both possible and desirable to collapse such distinction in certain contexts. *See* Mark Verstraete, *The Stakes of Smart Contracts*, 50 Loy. U. Chi. L.J. 743, 779 (2019). This is such a context; the parties have made no distinction, and the Court does not perceive any consequence to any such distinction in the current context. Thus, the Court uses the two terms interchangeably.

footing with all other contracts." *Id*. (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotation omitted)). To that end, any doubts regarding arbitrability must be resolved in favor of arbitration. *Id*. (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). However, while the courts must respect "the liberal federal policy favoring arbitration agreements . . . arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *See id.* (citing *Seawright*, 507 F.3d at 972). Because arbitration agreements are fundamentally contracts, the enforceability of a purported agreement to arbitrate is evaluated according to applicable state contract law. *See id.*

## DISCUSSION

Because the claim that Defendant requests to be referred to arbitration is a state-law claim, step three of the *Stout* test is it not at issue. The Court there addresses steps one, two, and four of the *Stout* test.

Defendant has identified on the record an arbitration agreement between itself and Plaintiff, and that the claim at issue in the instant Motion is within the scope of the agreement to arbitrate. (Doc. No. 23-1 at 3–4). The Court therefore finds that Defendant has met its initial burden of showing "some evidence showing that [Plaintiff] agreed to arbitrate." *Hammond*, 2020 WL 2473717, at *3. The burden then shifts to Plaintiff to demonstrate a genuine dispute of material fact as to the validity of the agreement to arbitrate, here, the Agreement. *See id.* In her response to the Motion, Plaintiff sets forth several arguments as to why, in her view, the Agreement is either invalid or inapplicable.

Plaintiff's response in which she makes these arguments is, to be frank, far from a model of clarity. This is a problem that not only disserves Plaintiff's opposition to the Motion but also imposes increased demands on the Court's already strained resources. Though Plaintiff leaves the Court with significant guesswork as to the nature and basis of her arguments, the Court is confident that it has construed them fairly.

The Court perceives that Plaintiff makes two arguments as to why there is a genuine dispute as to the validity of the Agreement. First, Plaintiff argues that the Agreement is unenforceable because (according to her) it lacks consideration. Second, Plaintiff argues, necessarily in the alternative, that even if the Agreement *is* enforceable, the THRA claim against Defendant falls outside the scope of the Agreement. The Court addresses and rejects each argument in turn below.

1. **Plaintiff has Failed to Meet Her Burden to Show that the Agreement Lacks Consideration**

Arbitration agreements are "fundamentally contracts, and therefore the Court reviews the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967 (6th Cir. 2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44, 115 S. Ct. 1920, 131 L.Ed.2d 985 (1995)). "[A]n enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002). Under Tennessee law,[10] "[m]utuality of promises is 'ample' consideration for a contract." *See, e.g.*, *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358. (Tenn. Ct. App. 2001); T.C.A. § 47-50-103

---

[10] Defendant and Plaintiff do not appear to dispute that Tennessee law applies to the interpretation of the Agreement.

("[C]ontracts in writing signed by the party to be bound . . . are prima facie evidence of a consideration."). It therefore follows that if the promise serving as consideration for a contract was later found to be illusory, the contract may then be found to be invalid for lack of consideration. *See Tackett v. M&G Polymers USA, LLC*, 811 F.3d 204, 208 (6th Cir. 2016) (explaining that general contract principles dictate that "courts [should] avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract . . ..") (alterations in original) (internal quotation marks omitted).

Plaintiff argues that the Agreement lacks consideration because, Plaintiff insists, Defendant's offer to assign Plaintiff at VUMC was illusory.[11] (Doc. No. 40 at 8). According to Plaintiff, assigning Plaintiff to work at VUMC was impossible because of her refusal to comply with the vaccination policy, and therefore Defendant did not "offer her terms in which she could become employed." (*Id.*). In Plaintiff's view, this made the offer illusory and, in turn, rendered the Agreement unenforceable for lack of consideration.

Plaintiff's argument here is without merit. Whether Defendant's offer to Plaintiff to assign Plaintiff at VUMC was illusory is irrelevant as to whether the *Agreement* lacked consideration. The mutual promises made in the Agreement were to *arbitrate*—and therefore forego the not insignificant prerogative to litigate in federal court—specified kinds of claims between Plaintiff and Defendant. Therefore, if Plaintiff wants to argue that the *Agreement* is unenforceable for lack of consideration, she must do so by attacking the consideration supporting the Agreement. It follows that if (as appears to be the case) Plaintiff's argument is that the Agreement lacks consideration because (according to Plaintiff) it is based on an illusory promise, then Plaintiff must show that the *promise underlying the Agreement* is illusory—and the promise underlying the

---

[11] The Court construes Plaintiff's argument regarding consideration as an attempt to show that step one of the *Stout* test cannot be met.

Agreement is a promise to arbitrate, *not* a promise to employ Plaintiff or a promise to offer terms acceptable to Plaintiff.

Importantly, Plaintiff has done nothing to demonstrate why the Defendant and Plaintiff's promises to arbitrate under the Agreement are illusory. "Tennessee law requires that a contract not be illusory, that is, that it impose genuine obligations on both parties." *Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995). "A promise is illusory when it fails to bind the promisor, who retains the option of not performing; an illusory promise is not consideration for a return promise, and so cannot be the basis for finding a contract." *See Rode Oil Co. v. Lamar Adver. Co.*, No. W2007–02017–COA–R3–CV, 2008 WL 4367300, at *10 (Tenn. Ct. App. Sept.18, 2008). The Court sees no basis, and Plaintiff points to none, that would indicate that the promises to arbitrate by Plaintiff and Defendant under the Agreement are illusory. The Court therefore finds that Plaintiff has failed to meet her burden to show to demonstrate a genuine dispute as to whether the Agreement lacks consideration.

**2. Plaintiff's THRA Claim against Defendant Falls within the Scope of the Agreement**

The Agreement states in pertinent part: "In consideration of the mutual promises contained herein, Undersigned Employee ("Employee") and Assignment America, LLC ("Company") ("collectively, the "Parties") agree that binding arbitration shall be the exclusive means of resolving all claims between them, whether or not arising out of or in any way related to Employee's employment with Company . . . ." (Doc. No. 23-1 at 3). The Agreement is signed by Plaintiff and a representative of Defendant. (*Id.*).

Plaintiff argues, necessarily in the alternative to her argument regarding consideration, that the Agreement is ambiguous because the word "employee" is subject to two or more reasonable interpretations. (Doc. No. 40 at 6); *Burka v. Vanderbilt University Medical Center*, 550 F. Supp.

3d 530, 541 (M.D. Tenn. 2021) (contractual provisions "may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous") (quoting *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 704 (Tenn. 2008)). Although Plaintiff does not actually state in her response what these reasonable interpretations are, the Court gleans that the options are (i) interpreting "employee" as including Plaintiff, or (ii) interpreting "employee" as not including Plaintiff. The first option would mean that Plaintiff's THRA claim against Defendant falls within the scope of the Agreement because the Agreement requires that "all claims between [the Employee and Defendant], whether or not arising out of or in any way related to Employee's employment with Company" be arbitrated. (Doc. No. 23-1 at 3). Conversely, interpreting "employee" as not including Plaintiff would make it so that the claim does not fall within the scope of the Agreement, and therefore that it is not subjected to arbitration under the Agreement.

Regardless of whether ambiguity exists, "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). In Plaintiff's view, the interpretation that the Court should adopt is that Plaintiff was not an "employee" given that she was never assigned to VUMC due to her religious objections to the vaccination policy. (Doc. No. 40 at 6–7). Strangely, Plaintiff does not posit that her interpretation is more consistent with her or Defendant's intentions than alternative interpretations, nor does she otherwise argue that her interpretation is more appropriate in any relevant regard. Plaintiff merely asserts in her response that the Court should adopt her interpretation because doing so would favor the party opposing arbitration—namely, of course, her. (*Id.* at 7–8). In other words, Plaintiff's sole grounds for asking the Court to adopt her interpretation is that doing so favors Plaintiff.

Once again, Plaintiff's argument is misguided. If Plaintiff (or more accurately, her attorney), had done adequate research before filing her response, she would have been aware that although "[i]t is true that courts generally rely on the *contra proferentum* doctrine to resolve ambiguities against the drafter of the agreement, [] where ambiguity in agreements involving arbitration exists, such as here, the strong presumption in favor of arbitration applies instead." *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 397 (6th Cir. 2014) (citing *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.,* 501 U.S. 190, 111 S. Ct. 2215 (1991)). Therefore, "any ambiguities in the contract should be resolved in favor of arbitration." *See id.* at 395.

Even assuming arguendo that Plaintiff is correct that the Agreement is ambiguous,[12] that does not mean that Plaintiff's interpretation prevails. Rather, if "'the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the court[ ] must resort to other rules of construction.'" *Id.* (quoting *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)). And here there is a rule of construction to which this Court can readily resort. The well-settled law in this circuit clearly counsels the Court to choose the interpretation favoring arbitration, which necessarily means interpreting "employee" as including Plaintiff. As the court in *Huffman* stated, "the court 'examines arbitration language in a contract in light of the strong federal policy in favor of

---

[12] Plaintiff may not actually be correct on this point. In this regard, it is relevant that "[n]ot every dispute with respect to the proper interpretation of [contractual] language [reflects the existence of] an ambiguity." *Burka v. Vanderbilt University Medical Center*, 550 F. Supp. 3d 530, 541 (M.D. Tenn. 2021) (quoting *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *4–5 (Tenn. Ct. App. Nov. 21, 2012) (quoting 16 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49:17 (4th ed. 2003))). A contractual provision "is not ambiguous simply because the parties disagree about its meaning." *Id.* In this case, as discussed further below, taken in context the term "employee" appears to be a clear reference to whomever it is who is the counterparty to the contract with Defendant—here, Plaintiff, obviously—irrespective of whether the counterparty ultimately amounts to an "employee" in any particular sense.

arbitration, resolving *any doubts as to the parties' intentions in favor of arbitration.*'"[13] 747 F.3d at 395 (emphasis added) (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007). Consistent with the approach of the Sixth Circuit and the courts herein, the Court interprets "employee" as *including* Plaintiff.

The Court's interpretation of the term "employee" is also consistent with the Agreement. It is evident from the Agreement that the term "employee" was not intended to be limited to someone fitting the legal (and colloquial) meaning of the word, *i.e.*, an individual who is employed by a person or entity. Instead, as already touched on in a footnote above, "employee" (however unfortunate or confusing a choice of word) is being used as a shorthand to refer to Plaintiff, the counterparty to the Agreement. Indeed, the Agreement refers to the "Undersigned Employee," which is then shortened to "Employee." (Doc. No. 23-1 at 3). On the last page of the Agreement, there is a signature line which requests the "employee signature" and is signed by Plaintiff. (*Id.* at 4). The Court is satisfied that upon signing the Agreement, both Defendant and Plaintiff intended and understood Plaintiff to be bound by the Agreement at the moment of signing and not effective upon the contingency that Plaintiff accept assignment at VUMC.[14] The Court is therefore satisfied that Plaintiff is an "employee" for purposes of the Agreement—and indeed the particular

---

[13] The Court is troubled by Plaintiff's reliance on *Gove v. Career Sys. Dev. Corp.*, 824 F. Supp. 2d 205 (D. Me. 2011) in support of the proposition that the Court should interpret ambiguities in favor of the party opposing arbitration. For starters, *Gove* is not binding precedent. Of course, parties are permitted to try to persuade the Court to adopt the reasoning of non-binding cases. It is wholly inappropriate, however, for a party to rely exclusively on a proposition stated in a non-binding case while ignoring *bountiful binding authority to the contrary*.

[14] Plaintiff's reliance on *Gove,* in support of her argument that the Court should interpret "employee" as not including Plaintiff, is unpersuasive. In *Gove*, the Court interpreted the ambiguity in the particular arbitration agreement there at issue in favor of the party opposing arbitration. *See Gove*, 824 F. Supp. 2d at 209. As explained above, the Court does not take the approach of the court in *Gove*, and instead follows binding precedent in interpreting the alleged ambiguity in the Agreement in favor of arbitration.

"employee" with which the Agreement was concerned—which in turn renders her THRA claim within the scope of the Agreement.

### 3. Staying the Claim Against Defendant Pending Arbitration

Now that the Court has determined that Plaintiff's claim against Defendant is subject to binding arbitration, the Court must determine what to do with the Plaintiff's claim against Defendant during the pendency of the arbitration. Defendant requests that the Court dismiss Plaintiff's claim against it rather than staying litigation of the claim pending the outcome of the arbitration. (Doc. No. 39 at 11). By contrast, Plaintiff asserts that Sixth Circuit precedent requires a district court to stay the case[15] rather than dismiss it. (Doc. No. 40 at 10) (citing *Arabian Motion Grp, W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021) (explaining that FAA required the district court to stay the action as the statutory landscape reveals that a district court should enter a stay in the normal course)). The FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. With respect to the arbitrable claims, it is sufficient to say that courts have treated 9 U.S.C. § 3 to require, at a minimum, a stay of arbitrable claims (not necessarily to the exclusion of staying non-arbitrable claims) upon application of one of the parties when fewer than all claims are referred to arbitration. *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Act also provides that a court must stay its proceedings if it is satisfied that an issue

---

[15] Plaintiff uses the language "case" in her request to stay the claim against Defendant. The Court has taken this to mean Plaintiff's claim against Defendant, to the exclusion of Plaintiff's additional claims against VUMC.

before it is arbitrable under the agreement") (citing 9 U.S.C. § 3); *see, e.g.*, *Highlands Wellmont Health Network, Inc v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) ("If a court determines that a claim is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. . .") (citing 9 U.S.C. § 3); *DeOrnellas v. Aspen Square Management, Inc.*, 295 F. Supp. 2d 753, 759 (E.D. Mich. 2003) ("The FAA requires a federal court to stay an action when an issue in the proceeding is referable to arbitration..."); *see also Jones v. U-Haul Co. of Massachusetts and Ohio, Inc.*, 16 F. Supp. 3d 922 (S.D. Ohio 2014)..

Although 9 U.S.C. § 3 ordinarily mandates a stay of arbitrable claims, there is a judicially created exception that permits courts instead to dismiss an (entire) action when "all claims" or ("all issues") before the court are referred to arbitration. *See e.g.*, *5th of July, LLC v. Thomas*, No. 3:19-cv-00994, 2020 WL 5983111 (M.D. Tenn. Oct. 8, 2020) ("whether to stay or dismiss a case in *which all claims* have been referred to arbitration is a matter of discretion") (emphasis added) (citing *Ozomoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009)); *In re Wholesale Grocery Products Antitrust Litigation*, No. 09–MD–2090, 2011 WL 13136279 at *2 ("A judicially-created exception exists that allows a district court to dismiss, rather than stay, a case *when all of the issues before the court* are arbitrable.") (internal quotations omitted) (emphasis added). Defendant argues that this judicially created exception applies to this case and that therefore Plaintiff's THRA claim against Defendant should be dismissed. (Doc. No. 39 at 11). The Court disagrees. The claims against VUMC are not being sent to arbitration (nor does any party hereto request that these claims be arbitrated). Therefore, not "all claims" in this action are being referred to arbitration. It follows that the judicially created exception does not apply.[16]

---

[16] The exception is, after all, an *exception* to a generally applicable rule, and there are good reasons to limit the exception to easily identifiable, unambiguous, and carefully circumscribed circumstances, *i.e.*, when *all* claims (against all defendants, if there is more than one defendant) are arbitrable. Additionally, "when a district court stays a case and retains jurisdiction over it that permits the parties to use these mechanisms

Therefore, Plaintiff's THRA claim against Defendant will be stayed pending the outcome of the arbitration. The remainder of the action is not stayed and will therefore proceed.

<u>CONCLUSION</u>

For the reasons set forth herein, Defendant's Motion (Doc. No. 38) is GRANTED in part and DENIED in part. Specifically, the Motion is granted in that the Plaintiff shall proceed to arbitration to resolve her THRA claim as requested by Defendant. The Motion is denied in that the THRA claim is stayed rather than dismissed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

promptly and efficiently. By contrast, a dismissal would require the parties to file a new action, possibly in front of a different judge." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941-942 (6th Cir. 2021). The exception to the generally applicable rule should be used only when it will enhance efficiency and present no likely potential problems for the parties and the court. And Defendant has given the Court no indication as to why it would be more efficient to dismiss rather than stay the THRA claim pending in this action.